# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Joseph Featherkile,
    Petitioner

vs.　　　　　　　　　　　　　　　Case No. 1:07cv1023
　　　　　　　　　　　　　　　　　(Spiegel, S.J.; Hogan, M.J.)

Warden, Warren Correctional
Institution,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. This matter is before the Court on the petition (Doc. 1); respondent's "Answer/Return Of Writ" (Doc. 6); and petitioner's "traverse" in reply to the return of writ (Doc. 9).

## Procedural Background

On October 22, 1999, the Hamilton County, Ohio, grand jury indicted petitioner in Case No. B9907787 on four counts of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4). (Doc. 6, Ex. 1). Petitioner's daughters were the victims of these offenses, which purportedly occurred in December 1995, December 1998, and between January 1 and February 28, 1999. (*See id.* & Ex. 10).

Following a jury trial, petitioner was found guilty as charged. On December 21, 1999, the trial court determined that petitioner was a "sexual predator" and sentenced him to consecutive terms of imprisonment totaling seventeen (17) years, with the sentence to run consecutively to another sentence imposed against petitioner

in a separate Hamilton County criminal case, Case No. B9905996. (*Id.*, Ex. 3).¹

With the assistance of his trial counsel, petitioner appealed his convictions and sentences in both Case No. B9907787 and Case No. B9905996 to the Ohio Court of Appeals, First Appellate District. (*Id.*, Exs. 5-6). The appeals were consolidated. (*Id.*, Ex. 7). Petitioner presented two assignments of error challenging the denial of his request for a separate trial on the two indictments and the sufficiency of evidence with respect to one of the charges in Case No. B9907787. (*Id.*, Ex. 8). On October 25, 2000, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Ex. 10). Petitioner did not appeal further to the Ohio Supreme Court.

Over a year later, on February 15, 2002, petitioner filed with the assistance of new counsel from the Ohio Public Defender's Office an application pursuant to Ohio R. App. P. 26(B) for reopening of the consolidated appeals with the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 11). On August 12, 2002, the Ohio Court of Appeals denied the reopening application because it was untimely and petitioner had not demonstrated "good cause" for the delay in filing. (*Id.*, Ex. 13). With the assistance of counsel, petitioner appealed this decision to the Ohio Supreme Court. (*Id.*, Exs. 17-18). On December 18, 2002, the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 20).

Over a year later, on January 8, 2004, petitioner next filed a federal habeas petition with this Court challenging his convictions in both Case No. B9907787 and Case No. B9905996. (*Id.*, Ex. 21). Petitioner alleged two grounds for relief stemming from the proceedings held on his application for reopening of the consolidated appeals. (*See id.*, p. 5).

Petitioner subsequently moved to voluntarily dismiss the petition without prejudice after a Report and Recommendation had issued to grant in part a motion to

---

¹In Case No. B9905996, petitioner was charged on August 8, 1999 with two counts of gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(4) and four counts of felonious sexual penetration in violation of Ohio Rev. Code § 2907.12(A)(1)(b). (Doc. 6, Ex. 2). Petitioner's niece was the victim of these offenses. (*See id.* &. Ex. 10). In that case, petitioner was found guilty as charged following a jury trial. On December 8, 1999, he was determined to be a "sexual predator" and was sentenced to the following consecutive prison terms to be served consecutively to the sentence imposed in Case No. B9907787: two (2) years for each gross sexual imposition offense and ten (10) to twenty-five (25) years for each felonious sexual penetration offense. (*Id.*, Ex. 4).

2

dismiss the petition with prejudice as time-barred and after the Court denied a motion to stay filed by petitioner. (*See id.,* Ex. 22, pp. 2-3). Petitioner sought a voluntary dismissal of the petition at such a late juncture in the federal habeas action because in "recently initiated" state proceedings, he was able to "successfully challenge his sentence and ha[d] been resentenced in Case No. B-9907787, and the 'only remaining claim (appellate counsel was ineffective for failing to challenge his predator designation) cannot stand on its own.'" (*Id.,* p. 3). Respondent opposed petitioner's motion for voluntary dismissal only to the extent that petitioner sought a dismissal without prejudice of claims relating to the convictions and sentences obtatined in Case No. B9905996 (*See id.,* pp. 3-4).

On December 30, 2005, United States Magistrate Judge Timothy S. Black issued a Report and Recommendation recommending that petitioner's motion for voluntary dismissal of the petition be granted "to the extent that any claims stemming from the criminal convictions and sentences in Case No. B-9907787 may be DISMISSED without prejudice," and "any claims stemming from the convictions in Case No. B-9905996 . . . should be DISMISSED with prejudice." (*Id.,* p. 5). In so recommending, the magistrate judge expressed the following "serious" reservations about dismissing any of the claims without prejudice:

> First, the undersigned has already issued a Report and Recommendation recommending the dismissal with prejudice of petitioner's ineffective assistance of appellate counsel claims alleged in Ground Two of the petition, which are purportedly based on the underlying claims of error in sentencing and in petitioner's designation as a sexual predator that petitioner now asserts should be dismissed without prejudice. That leaves only petitioner's claim alleged in Ground One that his appellate counsel's ineffectiveness in failing to cooperate with the Ohio Public Defender's Office constituted "good cause" for his untimely filing of his application to reopen his appeal. This remaining ground for relief, however, is not based on and does not otherwise relate to any claims stemming from petitioner's underlying convictions or sentences.
>
> Second, in denying petitioner's motion for stay while he exhausted the state remedy that resulted in his resentencing in Case No. B-9907787, the Court expressly pointed out that the instant petition does not contain any unexhausted claims; the sentencing issue that petitioner was raising in the state courts is not before this Court for consideration; and contrary

3

to petitioner's contention that he is seeking a "new sentencing hearing" as relief from this Court, "the only remedy available to petitioner on the ineffective assistance of appellate counsel claims alleged in the petition is a reopened direct appeal.". . .

(*Id.*, pp. 4-5). The magistrate judge concluded, however, that "because respondent has not opposed petitioner's motion to voluntarily dismiss without prejudice any claims stemming from his criminal convictions in Case No. B-9907787," such claims were subject to dismissal without prejudice. (*Id.*, p. 5).² The district court adopted the magistrate judge's Report and Recommendation on March 1, 2006, thereby closing the case. (*Id.*, Exs. 23-24).

In the meantime, on June 9, 2005, an attorney from the Ohio Public Defender's Office filed on petitioner's behalf with the trial court a motion to vacate sentence in Case No. B9907787. (*Id.*, Ex. 25). Petitioner claimed in the motion that his sentence was void because the court had failed to inform him of the mandatory term of post-release control. (*See id.*). Apparently, the trial court found merit to petitioner's claim and re-sentenced petitioner on September 27, 2005 to the same terms of imprisonment that were previously imposed in Case No. B9907787, but with the additional notification to petitioner that "as part of the sentence in this case, the defendant is to be placed on post release control supervision of R.C. 2967.28." (*Id.*, Ex. 26).

Another attorney filed a timely appeal on petitioner's behalf from the re-sentencing decision to the Ohio Court of Appeals, First Appellate District, raising among other claims, the following two assignments of error:

1. The trial court erred to defendant's prejudice by imposing non-minimum, maximum and consecutive sentences without findings by a jury, or admissions by defendant, of the factors necessary to support those sentences.

---

²In so recommending, the magistrate judge warned that "for the reasons given in the [prior] Report and Recommendation" to grant in part respondent's motion to dismiss the petition as time-barred, "any subsequent federal habeas corpus petition filed by petitioner challenging his convictions in Case No. B-9907787 based on errors occurring in the original trial and appeal proceedings remains subject to dismissal with prejudice on statute of limitations grounds." (Doc. 6, Ex. 22, p. 5).

4

2. The trial court erred to defendant's prejudice by imposing non-minimum, maximum and consecutive sentences when the record did not establish the factors necessary to support those convictions.

(*Id.*, Exs. 27-28).

On June 14, 2006, the Court of Appeals sustained the two assignments of error in sentencing in light of the Ohio Supreme Court's decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), and affirmed the trial court's judgment in all other respects. (*Id.*, Ex. 30). In remanding the matter for re-sentencing under *Foster*, the Ohio Court of Appeals expressly noted that now "courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." (*Id.*, p. 2). No appeal was taken from this decision to the Ohio Supreme Court.

On July 13, 2006, petitioner was re-sentenced yet again to the same terms of imprisonment that were originally imposed. (*Id.*, Ex. 31). The same counsel who represented petitioner on appeal from the September 27, 2005 re-sentencing decision filed a timely appeal on petitioner's behalf to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 32). Counsel argued in the appellate brief that petitioner was improperly re-sentenced to non-minimum, maximum and consecutive terms of imprisonment because:

1. The ex post facto and due process clauses of the United States and Ohio Constitutions forbid retroactively imposing a sentence that does not comply with protections offered by the sentencing statutes in effect when the offense was committed, or in re-sentencing Defendant under a different, and more onerous, statute; and

2. The rule of lenity bars interpretation of a sentencing statute in a manner most favorable to the state and least advantageous to the affected defendants.

(*Id.*, Ex. 33).

On May 2, 2007, the Ohio Court of Appeals overruled petitioner's assignment of error in light of its prior decisions holding that re-sentencing under *Foster* "does not violate either the constitutional ban on ex post facto and retroactive laws or the

5

rule of lenity in statutory interpretation." (*Id.*, Ex. 35). Petitioner's counsel attempted to appeal this decision to the Ohio Supreme Court. (*Id.*, Exs. 36-37). On August 29, 2007, the state supreme court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 38).

Next, on December 18, 2007, counsel from the Ohio Public Defender's Office filed the instant federal habeas petition on petitioner's behalf challenging the July 13, 2006 re-sentencing decision in Case No. B9907787. (*See* Doc. 1). Petitioner alleges two grounds for relief:

> **Ground One:** Petitioner's protection against the application of ex post facto law and his right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States of America were violated, when, upon resentencing, the trial court imposed a sentence that did not comply with the protections provided by the sentencing statutes in effect at the time . . . the offenses were committed, but rather resentenced him under a[] different and more onerous statute.

> **Ground Two:** The court's retroactive application of Ohio's sentencing statutes violates the rule of lenity in statutory interpretation, violating Petitioner's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

(Doc. 1, pp. 5-6).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One That His Re-Sentencing Under *Foster* Amounts To A Violation Of The Constitution's Ex Post Facto And Due Process Clauses

In Ground One of the petition, petitioner alleges that because his criminal offenses in Case No. B9907787 pre-dated *Foster,* he should not have been re-sentenced under *Foster* without "the presumption of a minimum sentence, and the requirement for special findings to justify more than minimum, maximum and consecutive sentences." (Doc. 1, p. 15). Given the history of this case, petitioner essentially contends that although the Ohio Court of Appeals correctly determined that the September 27, 2005 re-sentencing decision adding the term of post-release control

6

was unconstitutional under *Foster* because it was based on statutory provisions found to violate *Blakely v. Washington*, 542 U.S. 296 (2004), petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were violated when, as ordered by the Ohio Court of Appeals, the trial court applied on remand the remedy adopted in *Foster* to cure the constitutional infirmity.

Petitioner raised this claim of constitutional error on appeal from the final July 13, 2006 re-sentencing decision to both the Ohio Court of Appeals and Ohio Supreme Court. (*See* Doc. 6, Exs. 33, 37). The Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing this issue affirmed the re-sentencing decision on the authority of two appellate cases "in which we held that resentencing a defendant under . . . *Foster* does not violate either the constitutional ban on ex post facto and retroactive laws or the rule of lenity in statutory interpretation." (*Id.*, Ex. 35).

In this case, petitioner was convicted and sentenced in 1999 on the gross sexual imposition counts charged in Case No. B9907787. As respondent points out in the return of writ, three of the four charged offenses occurred after 1996 and thus were subject to the sentencing amendments enacted in 1996 in Senate Bill 2. (*See id.,* Brief, p. 2 & Ex. 1).

Under the amended sentencing statute in effect at the time of petitioner's conviction and original sentence, the sentencing court was required to "impose the shortest prison term authorized for the offense ... unless ... (1) [t]he offender was serving a prison term at the time of the offense, or the offender previously had served a prison term[;]" or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Ohio Rev. Code § 2929.14(B). Consecutive sentences were permitted for convictions of multiple offenses "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds . . . [t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Ohio Rev. Code § 2929.14(E)(4)(c).

These statutory sentencing provisions did not trigger constitutional concerns in 1999, when petitioner was convicted and originally sentenced, because the Supreme

Court had not even decided the seminal case *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the forerunner of *Blakely* and its progeny, which recognized for the first time that the Sixth Amendment right to a jury trial attaches to certain sentencing determinations. Indeed, at that time, there was a line of cases in effect, which had developed from a statement in *McMillan v. Pennyslvania*, 477 U.S. 79, 93 (1986), that "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact."[3]

In September 2005, when petitioner was re-sentenced to the same non-minimum, consecutive terms of imprisonment with the additional notification of a post-release control term, *Foster* had not been decided, but the Supreme Court had issued its decision in June 2004 in *Blakely*, as well as another decision in January 2005 in *United States v. Booker*, 543 U.S. 220 (2005), applying *Blakely* to the federal sentencing guidelines.[4] On February 27, 2006, while petitioner's direct appeal from

---

[3]In *Apprendi*, 530 U.S. at 490, however, the Supreme Court held that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that the defendant is guilty beyond a reasonable doubt of any fact, other than the fact of a prior conviction, *which increases the penalty for a crime beyond the prescribed statutory maximum.* In so ruling, the Court did not overrule the *McMillan* decision, which upheld a state's Mandatory Minimum Sentencing Act that "operat[ed] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it." *See Apprendi*, 530 U.S. at 485-87 & n.13 (quoting *McMillan*, 477 U.S. at 88). Instead, the *Apprendi* Court limited *McMillan's* "holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." *Apprendi*, 530 U.S. at 487 n.13.

[4]In *Blakely*, the state criminal defendant entered a guilty plea and, pursuant to the plea agreement, the state recommended a sentence within the standard range of 49 to 53 months. *Blakely*, 542 U.S. at 300. The trial judge rejected the recommended sentence and, instead, imposed an exceptional sentence of 90 months based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." *Id.* at 302-04. The Supreme Court reversed the defendant's sentence after finding the trial judge had enhanced the defendant's sentence beyond the statutory maximum based upon facts neither admitted to by the defendant nor found by the jury. *Id.* at 303. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* Importantly, the *Blakely* Court extended *Apprendi*'s reach in clarifying that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

the September 27, 2005 re-sentencing decision was pending before the Ohio Court of Appeals, the Ohio Supreme Court issued its decision in *Foster*, holding certain provisions of Ohio's sentencing statute unconstitutional under *Blakely* and *Booker*.

Specifically, in *Foster*, the state supreme court ruled that, despite the fact that "[m]ost Ohio appellate courts have determined that *Blakely* is inapplicable" to Ohio's sentencing statutes, portions of the statutes had been "eviserated by *Blakely*." *Foster*, 845 N.E.2d at 487-88. The *Foster* court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms;[5] and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 490-94.

Turning next to the question of what the appropriate remedy should be to bring about compliance with *Blakely*, the *Foster* court adopted the approach taken in *Booker* of severing from Ohio's sentencing statute the *Blakely*-offending portions of that statute and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See id.* at 494-98. In so ruling, the court reasoned in pertinent part:

Ohio's felony-sentencing structure may be severely wounded, but it is

---

In *Booker*, the Supreme Court extended *Blakely*'s holding to the federal sentencing guidelines; the Court held that the Sixth Amendment as construed in *Blakely* applied to the guidelines and thus any fact (other than a prior conviction) that increases a federal criminal defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244.

[5]It is noted that recently, on January 14, 2009, the Supreme Court issued a decision upholding the constitutionality of a state sentencing statute which constrained the trial court's discretion by requiring it to find certain facts before imposing consecutive, rather than concurrent, sentences. *Oregon v. Ice*, No. 07-901, 2009 WL 77896, at *3 (U.S. Jan. 14, 2009) (to be published). Although the *Foster* court held a similar provision in Ohio's sentencing statute was *Blakely*-offending, *see id.* at *5 n.7, it now appears that in light of this recent Supreme Court precedent, no Sixth Amendment concerns are triggered with respect to consecutive sentencing decisions. *See id.* at *6-8.

9

not fatally unsound. Our holdings are limited to areas where the statutes are *Blakely*-deficient. As a result, we must decide on a remedy. The question becomes, which remedy to apply?

Since *Blakely* was decided, other states have examined their sentencing statutes and crafted remedies in response to the . . . error. These states have come to varying conclusions regarding the impact of *Blakely*, with no two supreme courts resolving the constitutional issues identically. The selected remedies fall into three broad categories: requiring sentencing juries, reducing sentencing to minimum terms until the state legislature acts, and severing the offending sections.

In considering the Federal Sentencing Guidelines, the United States Supreme Court observed that the remedial question for a *Blakely* violation is to be resolved by looking to legislative intent. *Booker*, 543 U.S. at 246. . . . We note that the overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender. S[enate] B[ill] 2 delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals. With this context in mind, we examine the possible remedies.

One way to comply with *Blakely* is to provide for jury involvement in sentencing, as is done in capital cases. We have already held that a common pleas judge lacks jurisdiction to conduct a jury-sentencing hearing pursuant to the current statutes. *State ex rel. Mason v. Griffin*, . . . 819 N.E.2d 644 [(Ohio 2004)]. In *Griffin*, we granted a writ of prohibition to prevent the judge from conducting a sentencing hearing before a jury in a noncapital case. Certainly the General Assembly may enact legislation to authorize juries to find beyond a reasonable doubt all facts essential to punishment in felony cases, but it has not yet done so. We cannot say that, if faced with the *Apprendi* and *Blakely* decisions before passing S.B. 2, the General Assembly would have enacted such legislation. The General Assembly undoubtedly never anticipated that the judicial-finding requirements contained in S.B. 2 would be held unconstitutional. We therefore reject this potential solution.

A second way to comport with *Blakely* would be to accept the criminal defendants' request that we interpret all the affected statutes as imposing

only the minimum sentence for those entering prison for the first time and as preventing maximum sentences, consecutive sentences, and enhanced penalties such as repeat-violent-offender and major-drug-offender prison sentences, because all require judicial fact-finding. The criminal defendants . . . urge us to hold that for purposes of *Apprendi, Blakely,* and *Booker,* the "statutory maximum" in Ohio is the presumptive term–i.e., the minimum, current term–rather than the longest possible term. . . .

*The General Assembly provided a sentencing scheme of "guided discretion" for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are expressed. We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate sentence.*

A third possibility for *Blakely* compliance is the severance remedy. *Booker* provided a blueprint for this remedy by converting the guidelines from mandatory to advisory through severance of the offending portions. Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury. . . .

As Justice Stevens clarified in *Booker,* "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984] the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker,* 543 U.S. at 234. . . .

****

. . . .By vesting sentencing judges with full discretion, it may be argued this remedy vitiates S.B. 2's goals, particularly with respect to reducing sentencing disparities and promoting uniformity. Indeed, the dissenters in *Blakely* fretted that as a result of the *Apprendi* expansion, "[o]ver 20 years of sentencing reform are all but lost***." 542 U.S. at 326 . . . (O'Connor, J., dissenting). It may well be that in the future, the Ohio Criminal Sentencing Commission may recommend *Blakely*-compliant modifications to the General Assembly that will counteract these, among other, concerns. Nevertheless, we are constrained by the principles of separation of powers and cannot rewrite the statutes.

Significantly, the severance remedy preserves "truth in sentencing," a fundamental element of S.B. 2. Because offenders will continue to be sentenced to a specific prison term, all parties . . . will know at the time of sentencing exactly what sanction the court is imposing on the defendant. Moreover, S.B. 2 established an entirely new framework for felony sentencing in Ohio, and the breadth of its reforms is wide. For example, the legislation recategorized numerous felonies, added various sentence-enhancing specifications, permitted courts to use residential and non-residential sanctions in lieu of a prison term, required a definite term of imprisonment, and created the option of a life sentence without the possibility of parole. The overwhelming majority of those reforms survive today's constitutional decision.

Severance also is the remedy that will best preserve the paramount goals of community safety and appropriate punishment and the major elements of our sentencing code. Removing presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General Assembly's goal of truth in sentencing.... Our remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that *Blakely* prohibits.

*Foster,* 845 N.E.2d at 494-96, 498-99 (footnotes omitted) (emphasis added).[6]

In this case, although *Foster* had not been decided when petitioner's appellate brief was filed, petitioner's counsel raised a *Blakely/Booker* claim as an assignment of error on direct appeal from the September 2005 re-sentencing decision. (*See* Doc. 6, Ex. 28). Because the Supreme Court of Ohio held in *Foster* that its decision extended to cases then pending in the Ohio courts on direct review, *see Foster,* 845 N.E.2d at 499, the Ohio Court of Appeals applied the *Foster* decision in the instant case both in determining that constitutional error had occurred on re-sentencing in light of *Blakely* and *Booker* and in applying the *Booker* severance remedy, which allowed the trial court full discretion on remand to impose a sentence within the range established by state statute.

In challenging the state appellate court's decision in the instant case, petitioner essentially asks the Court to apply *Foster* to the extent he contends that the trial court's imposition of non-minimum consecutive sentences violated *Blakely* and *Booker,* while at the same time arguing against *Foster*'s application to the extent the state supreme court adopted the severance remedy utilized in *Booker.* As one Ohio appellate court pointed out in rejecting the same argument raised in an analogous case, petitioner "essentially seeks the benefit of a state of law that never existed; he wants 'a sentence that comports with the Sixth Amendment requirements of *Booker* [and *Foster*], but wants to avoid the possibility of a higher sentence under the remedial holdings of *Booker* [and *Foster*].'" *State v. Paynter,* No. CT2006-0034, 2006 WL 3020319, at *5 (Ohio Ct. App. 5 Dist. Oct. 13, 2006) (unpublished) (quoting *United States v. Jamison,* 416 F.3d 538, 539 (7th Cir. 2005)) (which joined other circuits in rejecting "an *ex post facto* claim based on the remedial holding in *Booker*" that was brought by a defendant

---

[6]The *Foster* court further determined that the severance remedy adopted by it satisfied Ohio law. *Foster,* 845 N.E.2d at 496-48. In so holding, the court stated:

Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

*Id.* at 497-98.

challenging his federal sentence).

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10.

Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb. 1, 2008) (unpublished); *see also Rogers*, 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers*, 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-55 (1964)); *see also United States v. Barton*, 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied*, 549 U.S. 1087 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner of the gross sexual imposition charges, and petitioner was aware of the potential penalties he faced on such charges both before and after *Foster*. *Cf. McGhee, supra*, 2008 WL 320763, at *11. Moreover, the provisions of Ohio's sentencing statute, which were applicable at the time petitioner was originally sentenced in 1999 and re-sentenced in September 2005, provided sufficient notice to petitioner that the trial court had discretion to impose consecutive, non-minimum and

14

even maximum sentences as long as the court made certain findings consistent with Ohio Rev. Code §2929.14(B), (C) and (E).

Similarly, post-*Foster,* and on petitioner's re-sentencing in July 2006 to the same terms of imprisonment, petitioner knew that the trial court retained the discretion to impose sentences within the applicable statutory ranges, as well as consecutive sentences for multiple offenses. Therefore, both before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties.

As an Ohio district court reasoned in rejecting a state prisoner's *ex post facto*-type due process claim challenging his re-sentencing under *Foster* to the same maximum prison term that had been imposed pre-*Foster*:

> Prior to *Foster,* the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to presentment to the grand jury, trial by jury or proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).
>
> Now, Petitioner alleges that his due process rights were violated because he has a right to presentment to a grand jury, trial by jury and proof beyond a reasonable doubt under the new law arising from *Foster*. After *Foster,* the elements of the crime for which Petitioner was charged were unaffected; therefore, he had no right to re-presentment to a grand jury or trial by jury as to the elements of the crime. Further, Petitioner's claim of a right to presentment to a grand jury and trial by jury regarding sentencing factors lacks merit because, following *Foster,* the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner believed it was before *Foster*.
>
> Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced

15

for a first degree felony, *Foster* does not raise an *ex post facto*-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.

*McGhee, supra,* 2008 WL 320763, at *11. *See also Rettig v. Jefferys,* 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (rejecting *ex post facto* challenge to *Foster* remedy); *Collins v. Warden, Chillicothe Corr. Inst.,* No. 3:06cv256, 2008 WL 728390, at *8-9 (S.D. Ohio Mar. 17, 2008) (unpublished) (Rice, J.; Merz, M.J.) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster*] does not," and that "[n]othing in the United States Constitution calls such a sentence into question").[7]

Accordingly, in sum, the undersigned concludes that petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were not violated when the trial court applied the remedy adopted by the Ohio Supreme Court in *Foster* in re-sentencing petitioner on remand from the Ohio Court of Appeals' decision sustaining petitioner's claim of a *Blakely* violation with respect to the September 2005 re-sentencing decision imposed to correct another error in the original December 1999 sentence regarding post-release control. Therefore, petitioner is not entitled to relief based on the claim alleged in Ground One of the petition, challenging petitioner's re-sentencing in July 2006 in accordance with *Foster* to exactly the same terms of imprisonment as originally imposed in 1999.

## B. Petitioner's Claim In Ground Two That He Was Denied Due Process Because Of A Violation Of The "Rule Of Lenity" In Statutory Interpretation Is Not Cognizable In This Federal Habeas Proceeding

In Ground Two of the petition, petitioner alleges that he was denied due process because the state courts violated the "rule of lenity" in statutory interpretation when they retroactively applied the "harsher" *Foster* severance remedy in reimposing the same sentence that was originally imposed in 1999, in order to cure the *Blakely/Booker*

---

[7]It is noted that the circuit courts similarly have uniformly rejected *ex post facto* challenges to the application of advisory sentencing guidelines under *Booker* to federal criminal defendants who committed crimes prior to *Booker. See, e.g., Barton,* 455 F.3d at 653-57 (and numerous cases cited therein).

violation found in the September 27, 2005 re-sentencing decision. (*See* Doc. 1, pp. 15-16). Respondent argues in the return of writ that this claim, essentially "attacking the state court's interpretation of a state statute," does not constitute a cognizable ground for federal habeas relief. (Doc. 6, Brief, pp. 13-14). Respondent's argument has merit.

This federal habeas Court has no power to grant habeas relief based on petitioner's allegation of error of constitutional dimension, because the rule of lenity is merely a canon of statutory intepretation and "nothing in the federal constitution requires a state court to apply the rule of lenity when interpreting a state statute." *Bowen v. Romanowski,* No. Civ. 05-cv-72754-DT, 2005 WL 1838329, at *2 (E.D. Mich. Aug. 2, 2005) (unpublished) (citing *Sabetti v. Dipaolo,* 16 F.3d 16, 19 (1st Cir.), *cert. denied,* 513 U.S. 916 (1994)); *cf. Lurie v. Wittner,* 228 F.3d 113, 126 (2nd Cir. 2000) ("The rule of lenity is a canon of statutory construction, not in itself federal law.") (citing *United States v. Torres-Echavarria,* 129 F.3d 692, 698 n.2 (2nd Cir. 1997), *cert. denied,* 522 U.S. 1153 (1998), and *United States v. Harris,* 959 F.2d 246, 258 (D.C. Cir. 1992)), *cert. denied,* 532 U.S. 943 (2001).

The Second Circuit has pointed out that the rule of lenity "is called into service to protect the constitutional right to fair warning." *Lurie,* 228 F.3d at 126. The court continued that because the rule is a "canon of construction rather than a federal law, at least two circuits have determined–and we see no Supreme Court caselaw to the contrary–that federal courts cannot vacate a state conviction on lenity grounds unless a state criminal statute (i) is unconstitutionally vague, or (ii) otherwise fails to give constitutionally required 'fair notice.'" *Id.* (citing *Sabetti,* 16 F.3d at 19, and *Poole v. Ward,* 45 F.3d 246, 249 (8th Cir.), *cert. denied,* 515 U.S. 1134 (1995)).

Petitioner has not argued, nor does it appear, that the relevant provisions of Ohio's sentencing statute are subject to attack on constitutional vagueness grounds. Moreover, as discussed above in rejecting the *ex post facto*-type due process claim alleged in Ground One of the petition, both before and after *Foster,* petitioner had "fair notice" of the potential penalties he faced and of the trial court's discretion to impose those penalties. Therefore, petitioner is unable to prevail on any claim, which may be remedied in this proceeding, stemming from the alleged violation of Ohio's "rule of lenity" in interpreting the state sentencing statute.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the claim alleged in Ground Two of the petition, because the Ohio courts' alleged violation of the "rule of lenity" fails to give rise to a cognizable constitutional claim.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue in this case because petitioner has not shown that reasonable jurists could debate whether petitioner's claims, addressed on the merits herein, should have been resolved in a different manner or that the issues presented are "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (in turn quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 1/26/09

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2009 habeas orders\07-1023denypet.foster-expostfacto-ruleoflenity.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph Featherkile,
    Petitioner

vs                                  Case No. 1:07cv1023
                                  (Spiegel, S.J.; Hogan, M.J.)

Warden, Warren Correctional
Institution,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).